U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

**United States Bankruptcy Judge**

**Signed February 19, 2013**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ELLIS WAMSLEY, IV, | § | CASE NO. 12-34039-SGJ-7 |
| | § | |
| D E B T O R. | § | |

**MEMORANDUM OPINION AND ORDER COMPELLING DEBTOR TO TURNOVER TO CHAPTER 7 BANKRUPTCY TRUSTEE YEAR 2007 MODEL ASTON MARTIN VEHICLE (VIN # SCFAD02A67GB07897)**

**A.   INTRODUCTION.**

In the famous, long-running Ian Fleming *James Bond* movie series, the sophisticated, handsome, martini-drinking, tuxedo-wearing main character, James Bond—also known as "Agent 007"—has assumed the wheel and gear shifts of many sleek and stylish vehicles over the decades.  Often, these vehicles are gadget-laden with such things as pop up machine gun barrels, rocket propulsion, bullet proof glass, secret compartments for weapons, spike producing tires, missile launchers, and passenger ejection

1

seats—all designed to out maneuver the most diabolical enemies of Her Majesty the Queen and the United Kingdom.  Arguably, the most tantalizing of all exotic and sensational James Bond vehicles has been the British-manufactured sports vehicle known as the **Aston Martin** (which Agent 007 has enjoyed driving, courtesy of the uber-cool "Q Branch," a division of the MI6 headquarters of Her Majesty's Secret Service in London).

*Aston Martins* (including models such as the DB5, DBS, V8 Vantage Volente, and V12 Vanquish) have appeared with dramatic splendor in at least a half dozen James Bond films including: *Goldfinger; Thunderball; Golden Eye; Tomorrow Never Dies; Casino Royale;* and *Skyfall*.[1]  In some of these movies, the **Aston Martin** has suffered a spectacular and explosive demise.[2]  While the faint-at-heart car lover may weep at the blasphemous sight of an **Aston Martin** in pyrotechnic destruction, the hero "Bond, James Bond," always lives to see another day (usually watching his next sunrise with a mysterious woman named something like Domino or Vesper).  In the end, all is well, for audiences know that Agent 007 will receive yet another lavish ride from the Q Branch in connection with his future international missions fighting evil.

It is, no doubt, uncommon for an **Aston Martin** to find itself

---

[1] Bond, James Bond, was also known to occasionally drive a BMW, Audi, Alfa Romeo, Bentley, and Lotus, among other exotic vehicles.

[2] *See, e.g., Skyfall.*

the subject of a bankruptcy court decision.  But such is the case today.

**B.  THE TURNOVER MOTION.**

1.  Before this court is a Trustee's Motion for Turnover of Property Pursuant to 11 U.S.C. §§ 541(a) and 542 (the "Turnover Motion"), filed on February 12, 2013 [DE #34] by the Chapter 7 Trustee, Jeffrey H. Mims (the "Bankruptcy Trustee").

2.  This court has jurisdiction over the Turnover Motion pursuant to 28 U.S.C. § 1334, and the Turnover Motion presents a "core" proceeding in which this court can issue final orders, pursuant to 28 U.S.C. § 157(b).

3.  The statutory predicate for the Turnover Motion is, primarily, section 542 of the Bankruptcy Code, which requires anyone in control or possession of property of a bankruptcy estate that a trustee may use, sell, or lease [to satisfy claims of creditors] to deliver it to the bankruptcy trustee. 11 U.S.C. § 542(a).

4.  The Bankruptcy Trustee who filed the Turnover Motion presides over the Chapter 7 bankruptcy case of Mr. Ellis Wamsley, IV (the "Debtor" or "Mr. Wamsley").  Mr. Wamsley filed his bankruptcy case voluntarily on June 26, 2012 (the "Petition Date").

5.  The bankruptcy case of Mr. Wamsley has not proceeded in a smooth manner.  In fact, it has slowly devolved from bad to

worse.

**Lack of Cooperation at First Meeting of Creditors.**

6.  Mr. Wamsley's section 341 first meeting of creditors was
originally set for July 25, 2012, but Mr. Wamsley did not appear.
The first meeting of creditors was then continued to August 29,
2012, and while Mr. Wamsley then appeared, his meeting had to be
continued once again, since Mr. Wamsley did not provide all
necessary information to the Bankruptcy Trustee and United States
Trustee.  The meeting was continued to September 27, 2012, but
Mr. Wamsley did not then appear.  *See* DE ## 4, 25, 26, 28.

7.  The United States Trustee requested various information
and documents regarding certain businesses in which Mr. Wamsley
was discovered to be involved but were not listed in his
Bankruptcy Schedules, including:  FAIM Economic Development, a
domestic nonprofit corporation ("FAIM"); FEDC Holding Inc.; and
Panache Star Entertainment LLC.  Mr. Wamsley, though given ample
time and opportunity, refused to produce the information or
otherwise cooperate.  This court is unsure what the genuine
business endeavors are for each of these business entities,
except that FAIM has been described as having a mission to
"economically revitalize communities through financial education
and economic development."  Apparently FAIM has, in the past,
received significant grant money from major donors, including at
least one large financial institution (Mr. Wamsley represented to

the court at a hearing on January 2 and 9, 2013 that the financial institution known as HSBC has been a major donor to FAIM), which grant money was intended to go toward FAIM's stated mission. *See, e.g,* DE # 1 from Adversary Proceeding # 12-3226. The United States Trustee requested bank statements for FAIM, but Mr. Wamsley never provided them. *Id.*

8. The United States Trustee filed a Complaint Objecting to Mr. Wamsley's discharge in bankruptcy due to his failure to cooperate and failure to provide accurate and complete information in his Bankruptcy Schedules. In the Debtor's Bankruptcy Schedule I, he described himself as a self-employed consultant earning $3,200 dollars gross income per month. *See* DE # 13. Debtor's Statement of Financial Affairs stated that Debtor was a 100% shareholder of an entity called E&T Business Development Corporation, a Real Estate Development Company, from years 2004-2008 and also stated that he earned as a self-employed consultant $28,745 in 2010; $32,300 in 2011, and $15,000 through the Petition Date in 2012. *See* DE # 14. The Bankruptcy Schedules never mentioned FAIM, FEDC Holding Inc., nor Panache Star Entertainment LLC.

**Denial of Mr. Wamsley's Discharge.**

9. On January 17, 2013, the bankruptcy court entered a Judgment denying Mr. Wamsley's discharge in bankruptcy, pursuant to section 727(a)(3) and (a)(4) of the Bankruptcy Code (*i.e.,* for

concealing or failing to keep information from which the debtor's financial condition or business transactions might be ascertained, and knowingly and fraudulently making a false oath in connection with a bankruptcy case).  DE # 22 from Adversary Proceeding # 12-3226.

**The Aston Martin.**

10.  The Bankruptcy Trustee has now discovered that the Debtor (or possibly the nonprofit entity FAIM that he apparently directs—*i.e.,* the one that takes grant money from major donors for the mission of "economically revitaliz[ing] communities through financial education") owns a year 2007 Aston Martin automobile, VIN # SCFAD02A67GB07897 (the "Aston Martin").  The Aston Martin is not disclosed in Mr. Wamsley's Bankruptcy Schedules.  The copy of the Texas Certificate of Title produced by the Bankruptcy Trustee shows the owner of the Aston Martin as "*FAIM EDC Ellis Wamsley IV*" with an address of "400 S. Zang Blvd, Dallas, TX 75208" and shows that there is no lienholder on the vehicle.  The Debtor only listed one vehicle in his Bankruptcy Schedules: a 1997 Lexus LX450 (and the Debtor listed a total of $13,700 worth of personal property owned overall).  Not only did the Debtor merely list a 15-year-old Lexus in his Bankruptcy Schedules, but in his Statement of Financial Affairs, he indicated that he was not holding or in control of any property owned by another (*see* DE # 14, Question 14), and he did not

disclose FAIM, when asked to list names, addresses, and tax
identification information for all businesses in which debtor is
or was an officer, director, partner, managing executive, or was
self-employed in the preceding six years (*see* DE # 14, Question
18).  Among the things the Debtor *did* disclose in his Schedules
was $549,390 of general unsecured debt; $157,000 of secured debt,
but no priority debt.  *See* DE # 13.

    11.  While there is no evidence in the record of the value
of the Debtor's Aston Martin (again a 2007 model), the court
takes judicial notice that new Aston Martins can easily list for
a price of more than $200,000.[3]  The copy of the Texas
Certificate of Title produced by the Bankruptcy Trustee shows the
Aston Martin was purchased by the Debtor on February 23, 2011 and
it had 3,736 miles on the odometer at the time of purchase.

    12.  The Bankruptcy Trustee has demanded that Mr. Wamsley
turn over the Aston Martin.  Mr. Wamsley has refused.  Thus, the
Bankruptcy Trustee has now filed this Turnover Motion seeking the
turnover of the Aston Martin and also legal fees and costs for
having to bring this Turnover Motion.

    13.  The court held an evidentiary hearing on the Turnover
Motion on February 19, 2013.  Mr. Wamsley, though provided notice

---

[3] Based on a random search of advertisements on the
Internet—perhaps not the most reliable of all information. The court
could not readily find a NADA publication showing a vehicle
comparable to the Debtor's Aston Martin.

of the Turnover Motion and hearing through his attorney, failed to appear at the hearing. Mr. Wamsley's lawyer (Lawrence Herrera) did appear at the hearing, but announced that he has not had a return phone call or other return communication from Mr. Wamsley since last September 2012.

14. This is all quite bad. It appears that the Debtor is failing to cooperate in a federal bankruptcy case; hiding assets from creditors; and may have purchased an outlandishly expensive car—the court fears with funds solicited from donors for an alleged charity. The bankruptcy court will be making a referral for criminal investigation to the United States Attorney and Texas Attorney General.

**ACCORDINGLY,**

**IT IS ORDERED** that the Debtor, Ellis Wamsley, IV, shall deliver into possession of the Bankruptcy Trustee the Aston Martin vehicle referenced herein, VIN # SCFAD02A67GB07897, along with the original Certificate of Title, copies of all insurance, and all keys and accessories that belong with or are associated with the Aston Martin, at the Bankruptcy Trustee's office, 900 Jackson Street, Dallas, Texas 75202, ***on or before 12:00 noon Central Time on February 20, 2013***.

**IT IS FURTHER ORDERED** that, in the event that Mr. Wamsley does not timely comply with this order ***the United States Marshal, upon being notified of such noncompliance, is directed to use all***

*lawful means to immediately seize* the Aston Martin vehicle referenced herein, VIN # SCFAD02A67GB07897, along with the original Certificate of Title, copies of all insurance, and all keys and accessories that belong with or are associated with the Aston Martin, and promptly deliver them to the Bankruptcy Trustee's office, 900 Jackson Street, Dallas, Texas 75202.

**IT IS FURTHER ORDERED** that Mr. Wamsley pay the Bankruptcy Trustee the amount of $1,500 as attorney's fees and costs incurred in having to prosecute the Turnover Motion.[4]

**IT IS FURTHER ORDERED** that *Mr. Wamsley's failure to strictly and promptly comply with this order may be considered as an act in contempt of this court, and this court will exercise all necessary remedies in order to coerce compliance and in order to further compensate the bankruptcy estate for any harm from lack of compliance.*

### END OF ORDER ###

---

[4] *See* 11 U.S.C. § 521 (generally describing a debtor's duties to cooperate with a trustee in a bankruptcy case, including at subsection (a)(4), a duty to surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers relating to property of the estate).  For the sake of clarity, it should be noted that Mr. Wamsley has not claimed an exemption on the Aston Martin.  Any attempts to do so at this late stage (and after nondisclosure) will likely be met with vigorous legal contention.